DWIGHT J. McCANN, PLAINTIFF IN ERROR, v. THE BOARD OF COUNTY COMMISSIONERS OF OTOE COUNTY, DEFENDANT IN ERROR.

1. **Taxes:** ACTION AGAINST COUNTY. Where certain certificates of illegal tax sales were surrendered to the county commissioners, the illegality of the sales being admitted, but the particular causes not being shown, *held* that the purchaser could recover from the county the amount actually paid by him upon said certificates, with 12 per cent interest.

2. **Public Roads:** POWER OF COUNTY COMMISSIONERS. County commissioners can only locate public roads and erect bridges thereon in the manner provided by law. The county commissioners of Otoe county made a contract with McCann to purchase a private bridge over the Nemaha river, and arbitrators were selected by the parties to appraise the same, and damages for right of way across McCann's land. *Held*, that the award was a nullity.

ERROR to the district court of Otoe county. Tried below before POUND, J. The case is stated in the opinion.

*E. F. Warren,* for plaintiff in error.

1. Plaintiff in error had, in 1868, in order to help the county authorities and raise money for the treasury, purchased at tax sale a large number of tracts of land, paid the amount of tax therefor into the treasury, and taken certificates of sale thereon. Many of these sales were void by reason of the fact that the taxes alleged to be delinquent had been paid by the owners of the lands, who produced receipts, and for other fatal defects. By Sec. 71, Chap. 66, p. 924, Gen. Stat., the county is required "to save the purchaser harmless by paying him the amount of principal and interest to which he would have been entitled had the land been righfully sold." This is but declaratory of the common law liability to refund in all such cases, because an action for money received to plaintiff's use would lie. *Norten v. Supervisors,* 13 Wis., 612. *Cobb v. Supervisors,* 18 Wis., 247. *Hutchinson v. Supervisors,* 26 Wis., 402. *Warner v. Board,* 19 Wis., 611. *Kellogg v. Board,* 42 Wis., 97. *Barden v. Columbia Co.,* 33 Wis., 445. *Wolf v. Sheyboygan,* 29 Wis., 82. *Nicodemus v. Saginaw,* 25 Mich., 456. *Board v. Manney,* 56 Ill., 160. *Hill v. Board,* 12 N. Y., 52. *Chapman v. Brooklyn,* 40 N. Y., 372. *Gillette v. Hartford,* 31 Conn., 356. *Slack v. Norwich,* 33 Vt., 818–23. *Preston v. Boston,* 12 Pick., 7. *Torrey v. Millsbury,* 21 Pick., 64. *Thayer v. Boston,* 19 Pick., 511. *Wright v. Boston,* 9 Cush., 233–241. *Glass Co. v. Boston,* 4 Met., 181. *Dow v. Sudbury,* 5 Met., 73. *Jayner v. School Dist.,* 3 Cush., 567. *Howe v. Boston,* 7 Cush., 273. *Rogers v. Greenbush,* 58 Me., 390. *Erskin v. Van Arsdale,* 15 Wall., 75. *Bank v. New York,* 43 N. Y., 184.

2. No demand is necessary before suit, nor need the claim be presented for allowance and audit to the board. *Newman v. Board,* 45 N. Y., 676. *People v. Supervisors,* 11 N. Y., 574. *Howell v. Buffalo,* 15 N. Y., 512. *Look v. Industry,* 51 Me., 375. *Pierce v. Benjamin,* 14 Pick., 356.

3. A claim for moneys paid into the county treasury for said tax sales is not within the jurisdiction of the board of commissioners—*Stringham v. Board,* 24 Wis., 512—and therefore this action does not come within the principle of the case of *Brown v. Otoe Co.,* 6 Neb., 112. See Dillon Mun. Corp., § 951.

4. The payment by the county for repairs upon McCann's bridge was clearly within their jurisdiction, and the contract to purchase the same was equally so, if in their discretion it was wiser and better so to do, than to build others. There is nothing in the transaction, as alleged in the answer, contrary to public policy. To deny to McCann payment, therefore, is to use, by the public, private property until it is destroyed, and then refuse compensation for the same. It is a species of confiscation.

*Covell & Ransom* for defendants in error.

1. The county commissioners could not audit or allow any claim in favor of McCann for invalid tax certificates, so as to bind the county, as is set up in the second count of his answer, because it was not within their jurisdiction. It was a claim for money paid for tax certificates alleged to have been invalid, and for county warrants paid for the same by McCann. Being such, it was no part of the legitimate expenditures of the county, and was not such an account as was " chargeable against the county," and only such were they authorized to examine, audit, and allow. *String-*

*ham v. Board,* 24 Wis., 594. *Marsh v. Board,* 42 Wis., 355. *Newman v. Supervisors,* 45 N. Y., 689. *People v. Supervisors,* 11 N. Y., 574. There would not have been any possible ground for a recovery by McCann against the county on his claim presented to the county board, concerning which their illegal order was made, in a suit therefor, unless it be given by sec. 71 Gen. Stat., 924.

We contend that not even under this statute has a tax purchaser any right of recovery against the county. A tax purchaser is one who voluntarily pays the taxes on another's land by purchasing same at tax sale, and not by compulsion, and therefore he cannot recover the amount so paid from the municipality receiving it. *Smith v. Redfield,* 27 Me., 145. *N. Y. R. R. Co. v. Marsh,* 12 N. Y., 308. *Walker v. St. Louis,* 15 Mo., 563. *Hospital v. Philadelphia Co.,* 24 Penn. St., 229. *Taylor v. Board of Health,* 31 Penn. St., 73. *Barrett v. Cambridge,* 10 Allen, 48. *Corkel v. Maxwell,* 3 Blatch., 413. *Phillips v. Jefferson Co.,* 5 Kan., 412. *Waubunsee Co. v. Walker,* 8 Kan., 431. *Christy's Administrator v. St. Louis,* 20 Mo., 143. *State of Wisconsin v. Hartman,* C. L. Jour., March 21, 1879, p. 236.

2. The board of county commissioners had no power under the statutes to make any such contract with D. J. McCann with respect to the purchase of a bridge of him, as is sought to be pleaded in said third count of his answer. No power is given them by chap. 9 of the revised statutes, 1866, entitled " County Commissioners and County Clerks," nor by chap. 47 of same statutes, entitled " Roads"—which were the statutes in force at the time of the alleged purchase— to make any such purchase, or attempt to make any such contract as is alleged; even if they had power to make the purchase of said bridge, they could not delegate their powers to third persons as arbitrators to fix

a price for the bridge, so as to bind the county by the award that might be made by them. The board of county commissioners can exercise no powers except such as are especially granted; and the grant must be strictly construed. There is no authority of law for the county commissioners to bind the county in the manner contemplated. *Stewart v. Otoe County*, 2 Neb., 177. *County of St. Louis v. Cleland*, 4 Mo., 84. *Hoover v. Hoover*, 5 Blackf., 182. *White v. Conover*, 5 Blackf., 462. *Murphy v. Napa Co.*, 20 Cal., 497. *Rhode v. Davis*, 2 Cart. (Ind.), 53. *Frees v. Ford*, 2 Seld. (N. Y.), 176.

MAXWELL, CH. J.

In April, 1876, the defendants in error brought an action against the plaintiff in error in the district court of Otoe county upon the following instrument:

"NEBRASKA CITY, Neb., Nov. 22, 1871.

"On demand we promise to pay the treasurer of Otoe county four hundred and sixty-three dollars and twenty-nine cents, in county general fund warrants.

"$463.29.

"D. J. McCANN & Co."

The petition alleges that, although the instrument is signed in the partnership name, yet it is the individual obligation of D. J. McCann, and this is not denied.

To this petition the plaintiff in error filed an answer, admitting the execution of the allegation above set forth, but denying that Otoe county was the owner of the same.

As a second defense he alleges that on or about the 8th day of September, 1868, he purchased from the treasurer of Otoe county a large amount of lands in said county for delinquent taxes, and paid the treasu-

rer in full therefor in cash and warrants, and received certificates of sale of the lands so purchased; that among said certificates were a large number that were illegal, and not collectible for various reasons; and on or about the 11th of September, 1873, he compromised with the board of county commissioners of said county, by which it was agreed that the commissioners should pay him for such worthless certificates the amount paid by him into the treasury of the county therefor, with interest at 12 per cent thereon upon the surrender of such certificates; that thereupon he surrendered certificates to the amount of $429.60, and received payment therefor; and in November following he surrendered other certificates, amounting with interest to the sum of $1627.20, upon which he was paid the sum of $598.03; that he was to have credit on the books of the treasurer for the amount remaining unpaid, amounting to the sum $1039.34.

As a third defense, he alleges that in the year 1872 he owned the land upon both banks of the Nemaha river at a certain point, and had erected at that place a bridge across said river for his own use; that during that year several freshets carried out the bridges across said river on the county roads, but that his was left undisturbed; that to preserve communication across the river the county commissioners entered into a contract with him for the use of said bridge by the public, and paid him therefor in one season the sum of $700; that afterwards certain arbitrators were chosen by the parties, and the value of said bridge and the right of way were appraised at the sum of $1300, no part of which has been paid.

To this count of the answer the defendants in error demurred upon the ground that the facts stated therein were not sufficient to constitute a defense. The demurrer was sustained, to which the plaintiff in error

excepted.    On the trial of the cause the court found the issues in favor of the plaintiff in error and dismissed the case, but denied the plaintiff in error any affirmative relief.    He brings the cause into this court by petition in error.

Section 70 of the revenue law (Gen Stat., 924) provides that: " When, by mistake or wrongful act of the treasurer or other officer, land has been sold contrary to the provisions of this act, the county is to save the purchaser harmless by paying him the amount of principal and interest to which he would have been entitled had the land been rightfully sold, and the treasurer or other officer, and their sureties, shall be liable for the amount on their bonds to the county, or the purchasers may recover the amount directly from the treasurer or other officer making the mistake or error."

No question is raised as to the illegality of the sales, nor as to the propriety of surrendering the certificates. Of the cause of the illegality we are not informed, except by general statements.    But as no question is raised upon that point, it appears to be sufficient to hold the county liable to the purchaser.    The plaintiff in error has evidently brought himself within the provisions of section 70 of the revenue law, and is entitled to recover the amount actually paid by him for the purchase of the lands described in the certificates so surrendered, less the amount already paid, together with twelve per cent interest on the amount of principal remaining unpaid.    And as the evidence is before the court, and there being no dispute as to the material facts, the clerk is directed to ascertain the amount due the plaintiff in error upon said certificates, and judgment will be rendered in this court for that amount.    The question of the liability of the treasurer or other officer making the mistake or error is not, under the issue, involved in the case.

School Dist. No. 9 v. School Dist. No. 6.

The demurrer to the third count of the answer was properly sustained. Whatever powers county commissioners may have to open temporary lines of communication in case of the sudden destruction of public bridges and culverts they cannot establish public roads in this manner. Public roads must be located and bridges erected thereon in the manner prescribed in the statute. *Robinson v. Mathwick*, 5 Neb., 252. *State, ex rel. Sims, v. Otoe Co.*, 6 Id., 129.

County commissioners can only exercise such powers as are expressly granted, or are incidentally necessary for the purpose of carrying the same into effect. *Stewart v. Otoe Co.*, 2 Neb., 177. *The S. C. & P. R. R. v. Washington Co.*, 3 Id., 42. If a private bridge is desired for the use of the public, the statute points out the mode of procedure by the location of a public road. And it also provides the mode of assessing damages, and this provision is exclusive. The award of the arbitrators is therefore a nullity. The judgment of the district court is reversed, and judgment will be entered in this court in conformity with this opinion.

JUDGMENT ACCORDINGLY.