The action being continued nisi, the opinion of the Court was delivered at this term by
Parsons, C. J.,
who, after shortly stating the nature of the action, the provisions of the statute on which it was [ * 144 ] * brought, and the terms of the agreement on which the verdict was found, proceeded as follows : —
The defence relied upon is, that the defendant took the fish in Cambridge.; that he put in his seine from the Cambridge shore, and having extended it into the river, he drew it upon the same shore, and there took the fish ; and that the fishery, thus carried on in Cambridge, is an accustomed fishery for the inhabitants of that town, in this place, and carried on in the accustomed manner.
The plaintiff insists that this fishery by the defendant is prohibited by the act, because Watertown is situate on the other side of the river, opposite to this place, and the defendant extended his seine across the channel, and over the flats on the Watertown side.
The decision of the question must depend upon the construction of the statute. It is stated that higher up the river, Watertoion is situated .on both sides of the river, where there is a convenient place for the shad and alcwive fishery, and which is called the Watertown fishery; and that the inhabitants of that town have been accustomed to fish there, and in no other place.
Towns adjoining, or extending across a navigable river, may own the soil of the flats, and even of the channel, if a grant has been *133 obtained from the government; but the property in the fish, and also of all tide waters, is in the public. But it seems to be a part of the common law of the state, that the town may appropriate the fish, if not appropriated by the legislature; but for taking the fish, no man could lawfully go on the soil of another without his leave. This rule of our common law probably originated from a declaration of common liberties, made by the General Court of the colony of Massachusetts Bay, as early as in the year 1641, which was cited at the bar. If, therefore, no appropriation has been made of the fish, any citizen may take them, so that he does not trespass on the land of others. But any town adjoining any river may appropriate the fish taken within its limits, and that the town on the opposite side of the river may have the same right, the limits must not include the tide waters ebbing and flowing, but the shores on which the *fish are drawn and placed, when they may be said [* 145 ] to be taken according to the intent of this privilege. If the fish, when caught swimming in the public tide waters, are to be considered as taken within the limits of any town before they are haled on shore, it will be difficult, in many cases, to define the interfering rights of towns situate on opposite banks; and when the channel is not granted, fish swimming there out of the limits of any town would not be subject to appropriation.
The power of appropriation only not meeting the wishes of many towns, acts have been passed authorizing them, not only to fix the times and manner of taking the fish, but also the places, and the disposition of them when taken ; and to sell the exclusive right of fishing; and guarding this authority by pecuniary penalties. And the place of fishing is always understood to be that part of the shore used for employing seines and nets, or other engines, and for bringing the fish to land; and not any part of the tide waters in which they were swimming.
Independently of the statute in question, the defendant, or any other, might have put his seine into the river from the Cambridge shore, and might have landed his fish, if he had committed no trespass on the land ; and the inhabitants of that town might have appropriated the fish, and have secured to themselves a several fishery. But the plaintiff" supposes that these privileges are restrained, or at least that the fish shall not be caught on the Watertown side of the river.
Private statutes, made for the accommodation of particular citizens or corporations, ought not to be construed to affect the rights or privileges of others, unless such construction results from express words, or from necessary implication. But every part of this statute may have a reasonable effect without any such construction. The *134 object of it was to enable the towns of Watertown, Weston, and Waltham, to regulate their own rights then subsisting, and to secure to themselves the benefits arising from such regulation, and not to grant any new privileges. The two last towns lay on each side of the river, and a part of Watertown extended across it. Watertown had a fishery on its shores, where the people were accus[*146] tamed to fish, and not at the place opposite * to the Cambridge fishery. The defendant was fishing on the Cambridge shore, where the people were accustomed to fish, and in the accustomed manner extending his seine across the river towards, but not upon, the Watertoivn shore, and taking his fish on the Cambridge shore. This privilege of the defendant it was not the intention of the statute to infringe. He may enjoy it consistently with all the provisions of the statute, giving them a reasonable construction.
It is, therefore, our opinion that the verdict be set aside, and a verdict of not guilty be entered, upon which the defendant must have judgment.