## COMMONWEALTH *vs.* CHARLES H. MANIMON.

Barnstable.   Jan. 21. — Feb. 29, 1884.   DEVENS & C. ALLEN, JJ., absent.

A person may be indicted, under the Pub. Sts. c. 91, § 101, for digging oysters from flats described in a license granted under § 97, without the consent of the licensee, if, in digging quahaugs, he disturbs and destroys oysters, although he does not take them from the water, and has no intent to do so.

No private right in an individual to dig quahaugs exists in this Commonwealth.

W. ALLEN, J.   This is an indictment under the Pub. Sts. *c.* 91, § 101, alleging that the defendant dug oysters from certain flats described in a license granted under the provisions of § 97 of the same chapter, without the consent of the persons licensed. There was evidence that the defendant, in digging quahaugs, disturbed and destroyed oysters; that his purpose was to dig quahaugs; and that he took no oysters from the water, and that he did not move or disturb them with intent to take them away. The defendant contends that the digging intended in the statute referred to is an act done with intent to remove and appropriate the oysters; and that taking them from their beds, or destroying them, without such intent, would come within § 93, and not § 101.   Section 101 expressly refers to oysters in artificial beds, and the provision in question is intended to protect the private rights of the owners of such beds.   Section 93, in view of the subject matter, and of the history of legislation thereon, must be held to refer to oysters in natural beds, and as intended to regulate the exercise of the common right of taking oysters from such beds.

The St. of 1795, *c.* 71, § 1, provided that "it shall not be lawful for any person to take any oysters from their beds, destroy them, or wilfully obstruct their growth therein, in any part of this Commonwealth, except as is hereinafter excepted,"

and imposed a penalty of two dollars for every bushel of oysters, including the shells, so taken or destroyed. The same section provided that it should be lawful for the selectmen of towns to give permits to take oysters from beds in their towns, and that it should be lawful for any inhabitant of a town to take oysters from their beds therein, for the use of his family, from the first day of September to the first day of June. Section 5 contained a provision that nothing in the act should prevent Indians from digging shell-fish for their own consumption, or fishermen from taking shell-fish for bait in a limited quantity. This statute was reënacted in 1836, in the Rev. Sts. c. 55, the first section of the St. of 1795 being §§ 11 and 12 of the Rev. Sts.; section 11 prohibiting the acts "except as is provided in the following section," and section 12 containing the provisions in regard to permits by the selectmen and the right of inhabitants to take oysters for their own use, and other sections reënacting the provisions as to Indians and fishermen. It was not until the St. of 1848, c. 152, that the right to which § 101 applies was created. That statute provided for the planting of artificial oyster beds under a license from the selectmen of towns, and gave to persons licensed the exclusive use, for that purpose, of the flats assigned to them, and an action of trespass against any person who should dig or take any oysters therefrom, to recover three times the amount of damage sustained thereby, and in addition thereto imposed upon the person so digging or taking such oysters a fine of $20 for each offence.

It seems plain, from an examination of these statutes, that when the Legislature provided for private ownership in oyster beds, there ceased to be any public or common right to take oysters from such beds, and the provisions intended to regulate the exercise of the common right do not apply to them; and that the provision in the act creating the right against digging and taking away oysters is all the protection intended to be given by the statute to licensed owners of oyster beds; and it is not reasonable to suppose that no protection was intended to them against any wrong but taking and carrying away oysters. The language of the statute does not require this construction; it is " dig, take, or carry away;" and the reason of it forbids it.

It cannot be contended that, when the St. of 1848, *c.* 152, was enacted, the Legislature omitted to provide any protection to the private right thereby created, except against theft, for the reason that the provisions of the Revised Statutes extended to other wrongs. Those provisions extended to the taking of oysters as well as to their destruction, but they did not extend to persons having permits from the selectmen, or to inhabitants of towns, or to Indians or fishermen, to the extent before stated; but it is clear that these were all excluded from all right to dig, take, destroy, or disturb oysters in licensed places. The only reasonable construction of the two statutes is, that they refer to different subject matters; and that, in prohibiting digging or taking oysters from a private bed, the Legislature intended a digging which moved oysters from their beds and destroyed them, although not done with the intent to remove and appropriate them.

These statutes were brought together in the Gen. Sts. *c.* 83, and in the Pub. Sts. *c.* 91, but there is nothing to indicate a different construction. Section 93 does not impliedly authorize persons having a permit from the selectmen, or inhabitants of towns, or Indians, or fishermen, to take oysters from a licensed place, because it does not apply to licensed beds, and imposes no penalty for the invasion of the private right of the licensed person; and for the same reason it does not impose a penalty upon a person, not within its exception, who takes oysters from a licensed bed with the consent of the person licensed. The provisions of §§ 99 and 101 were intended to protect the licensed person from injury to his oysters from digging them, as well as from the appropriation of them by a stranger.

It is further contended by the defendant, that the digging was not within the prohibition of the statute, because it was in the exercise of his private right to dig quahaugs. But he had no such private right. Whatever right of that kind he had was a public right. *Weston* v. *Sampson*, 8 Cush. 347. *Dill* v. *Wareham*, 7 Met. 438. *Commonwealth* v. *Bailey*, 13 Allen, 541.

*Exceptions overruled.*

*J. G. Sproat*, for the defendant.

*H. N. Shepard*, Assistant Attorney General, (*E. J. Sherman*, Attorney General, with him,) for the Commonwealth.