ROBERT T. BARRY *vs.* THEODORE M. GRELA & another.

Barnstable.    March 10, 1977. — March 31, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Seashore.    Real Property,* Littoral property, Beach.

As part of the "free fishing and fowling" granted by the colonial ordi-
nance of 1641-1647, the plaintiff had a right to walk on the defend-
ants' land between high and low water marks in order to fish from
a jetty not owned by the defendants. [278-280]

CIVIL ACTION commenced in the Superior Court on
February 6, 1975.

The case was heard by *Keating, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Maurice M. Goldman & Elmer E. Johnson, III,* for the
defendants, submitted a brief.

*Alan A. Green* for the plaintiff.

BRAUCHER, J.    The plaintiff claims a right to walk on
the defendants' land, between high and low water marks,
in order to fish from a jetty not owned by the defendants.
A judge of the Superior Court decided that the plaintiff
has the right he claims, and the defendants appealed. We
uphold the right as part of the "free fishing and fowling"
granted by the colonial ordinance of 1641-1647, found in
the 1649 codification, The Book of the General Lawes and
Libertyes, at 50. See *Opinion of the Justices,* 365 Mass.
681, 685 (1974). With a minor change for clarification, we
affirm the judgment.

We summarize the statement of agreed facts. The plain-
tiff and the defendants own lots of land fronting on Center-
ville Harbor. A jetty built in 1957 at public expense ex-

tends from the beach on the defendants' land into the water, and the defendants do not claim to own the jetty. A prior owner of the defendants' land allowed the plaintiff and members of the public to cross the defendants' beach between mean high water and mean low water to enable them to reach the jetty and to walk on the jetty for the purpose of fishing. Since the defendants acquired the land, they have refused to permit such walking and fishing.

The judge ordered judgment declaring that the plaintiff has the right to use the defendants' "property between the high and low water mark as a means of access to the jetty," and a right to fish from the jetty, and directing the defendants not to interfere with those rights. The defendants appealed, and we brought the case here on our own motion.

The colonial ordinance was in the nature of a grant of ownership, "subject to a reserved easement." *Commonwealth* v. *Alger,* 7 Cush. 53, 81 (1851). The right of fishing on the part of the public is not excluded, and extends to the taking of clams·from flats open to the natural ebb and flow of the tide. *Weston* v. *Sampson,* 8 Cush. 347, 355 (1851). Our cases "show too plainly for further discussion, that, if there is a right to go upon flats and to disturb the soil for clams, *a fortiori* there is a right to pass over them for fishing, in the stricter sense of the word." *Packard* v. *Ryder,* 144 Mass. 440, 441 (1887). In both the *Weston* and *Packard* cases the "fishing" was done on the flats of the complaining owner by people who came by boat. But we think the same principle applies to access over flats on foot to property of others, so long as the purpose is "fishing." In *Opinion of the Justices,* 365 Mass. 681, 687 (1974), we said, "We are unable to find any authority that the rights of the public include a right to walk on the beach." But that language is not to be taken as limiting the right of fishing. We have here no question of taking soil as fertilizer, as in *Porter* v. *Shehan,* 7 Gray 435, 437 (1856), or of bathing, as in *Butler* v. *Attorney Gen.,* 195 Mass. 79, 83-84 (1907).

The first paragraph of the judgment appealed from is to be modified by inserting, after the words "as a means of access to the jetty," the words "in order to fish from the jetty." As so modified, the judgment is affirmed.

*So ordered.*